# United States District Court

| | District |
|---|---|
| | Of MASSACHUSETTS |

| Name | Prisoner No. | Case No. |
|---|---|---|
| Bonnie DiToro | F/36659 | |

**Place of Confinement**

MCI FRAMINGHAM
PO Box 9007
FRAMINGHAM, MA. 01701

03-12467 PBS

| Name of Petitioner (include name under which convicted) | Name of Respondent (authorized person having custody of petitioner) |
|---|---|
| BONNIE DiTORO | V.   BARBARA GUARINO |

The Attorney General of the State of: **MASSACHUSETTS**

## PETITION

MAGISTRATE JUDGE Collings

1. Name and location of court which entered the judgment of conviction under attack

   MIDDLESEX SUPERIOR COURT

2. Date of judgment of conviction   August 13,1998

3. Length of sentence   FIFTEEN YEARS TO FIFTEEN YEARS AND ONE DAY

4. Nature of offense involved (all counts)   TRAFFICKING IN COCAINE,Indictment no.96-1272(001)
   VIOLATION OF MASS. GENERAL LAWS CHAPTER 94C,§ 32E(b)(4)

5. What was your plea? (Check one)
   (a) Not guilty   XXXXX
   (b) Guilty   ☐
   (c) Nolo contendere   ☐
   If you entered a guilty plea to one count or indictment, and not a guilty plea to another count or indictment, give details:

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury   XXXXXXXX
   (b) Judge only   ☐

7. Did you testify at the trial?
   Yes ☐   No XXXXX

8. Did you appeal from the judgment of conviction?
   Yes XXXX   No ☐

9.  If you did appeal, answer the following:

    (a) Name of court    MASSACHUSETTS APPEALS COURT

    (b) Result    JUDGMENT AFFIRMED

    (c) Date of result and citation, if known    COMMONWEALTH V. DiTORO,51 Mass App Ct 191(March 22,2001)further Appelate Review Denied June 7,2001

    (d) Grounds raised    INSUFFICIENT EVIDENCE,HEARSAY,EXCLUDED EVIDENCE AND ILLEGAL SEARCH & SEIZURE


    (e) If you sought further review of the decision on appeal by a higher state court, please answer the following:

        (1) Name of court    SUPREME JUDICIAL COURT

        (2) Result    ALOFAR DENIED


        (3) Date of result and citation, if known    434 Mass 1105 (June 7,2001)

        (4) Grounds raised    (Same as Appeals Court Grounds I Believe)


    (f) If you filed a petition for certiorari in the United States Supreme Court, please answer the following with respect to each direct appeal:

        (1) Name of court

        (2) Result


        (3) Date of result and citation, if known

        (4) Grounds raised


10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications, or motions with respect to this judgment in any court, state or federal?
    Yes ☒XXX    No ☐

11. If your answer to 10 was "yes," give the following information:

    (a) (1) Name of court    MIDDLESEX SUPERIOR COURT

        (2) Nature of proceeding    RULE 29 CHALLENGE TO SENTENCE RULE 30(a)(b) CHALLENGE TO CONVICTION NEW TRIAL MOTION


        (3) Grounds raised    CONFRONTATION CLAUSE VIOLATION,INSUFFICIENT EVIDENCE TO INDICT JURY INSTRUCTION ERRORS,INEFFECTIVE ASSISTANCE OFTRIAL AND APPELLATE COUNSEL ISSUES IDENTICAL TO FOLLOWING HABEAS CORPUS GROUNDS PRESENTED IN THIS PETITION,INFRA.

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐          No ☒ X

(5) Result  _Judge Zobel refused to rule or make findings denying motio_

(6) Date of result ·  _November and December 2001,with reconsideration denid._

(b) As to any second petition, application or motion give the same information:

(1) Name of court  _____

(2) Nature of proceeding  _____

_____

(3) Grounds raised  _____

_____

_____

_____

_____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐          No ☐

(5) Result  _____

(6) Date of result  _____

(c) Did you appeal to the highest state court having jurisdiction the result of action taken on any petition, application or motion?
(1) First petition, etc.          Yes ☒XX    No☐ Appeals Court and SJC ALOFAR
(2) Second petition, etc.         Yes ☐       No☐

(d) If you did *not* appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held unlawfully. Summarize *briefly* the *facts* supporting each ground. If necessary, you may attach pages stating additional grounds and *facts* supporting the same.
    Caution: In order to proceed in the federal court, you must ordinarily first exhaust your available state court remedies as to each ground on which you request action by the federal court. If you fail to set forth all grounds in this petition, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in habeas corpus proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you may have other than those listed if you have exhausted you state court remedies with respect to them. However, *you should raise in this petition all available grounds* (relating to this conviction) on which you base your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The petition will be returned to you if you merely check (a) through (j) or any one of these grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.

(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.

(e) Conviction obtained by a violation of the privilege against self-incrimination.

(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.

(g) Conviction obtained by a violation of the protection against double jeopardy.

(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impaneled.

(i) Denial of effective assistance of counsel.

(h) Denial of right of appeal.


A.    Ground one: _Confrontation Clause Violation,With Related_
_Ineffective Assistance Of Trial And Appellate Counsel,Contravening_
_Sixth And Fourteenth Amendments To The United States Constitution_

Supporting FACTS (state *briefly* without citing cases or law) _____

[See Attached Pages 6-13,Incorporated herein]


B.    Ground two: _____Prosecutorial Misconduct,Due process Violations,With_
_Related Ineffective Assistance Of Counsel,Contravening Sixth_
_And Fourteenth Amendments To The United States Constitution_

Supporting FACTS (state *briefly* without citing cases or law) _____

[See Attached Pages 13-16,Incorporated Herein]

C.    Ground three: __Ineffective Assistance Of Trial Counsel In Six__
__Areas And Insufficient Evidence Presented To Grand Jury,Contravening__
__Sixth And Fourteenth Amendments To United States Constitution Which__
__Also Violated Petitioner's Right To Testify &Conflict Free Counsel.__

Supporting FACTS (state *briefly* without citing cases or law) ——————————

[See Attached Pages 17-26,Incorporated Herein]

D.    Ground four: __Multiple Jury Instruction Errors,Material Varience And__
__Ineffective Assistance Of Trial And Appellate Counsel,Contravening__
__Sixth And Fourteenth Amendments To the United States Constitution__

Supporting FACTS (state *briefly* without citing cases or law) ——————————

[See Attached Pages 26-31,Incorporated herein]

13. If any of the grounds listed in 12A, B, C, and D were not previously presented in any other court, state or federal, state *briefly* what grounds were not so presented, and give your reasons for not presenting them: ——————————

ALL GROUNDS WERE FULLY EXHAUSTED IN STATE COURT

14. Do you have any petition or appeal now pending in any court, either state or federal, as to the judgment under attack?
Yes ☐     No ☒☒☒    (ALOFAR late filed 10/31/03 being denied now)
                     on new trial motion appeal denied 4/28/03

15. Give the name and address, if known, of each attorney who represented you in the following stages of judgment attacked herein:

(a)    At preliminary hearing    John Bosk

(b)    At arraignment and plea    John Bosk

GROUND ONE FACTS SUPPORTING CONFRONTATION CLAUSE VIOLATIONS n.1/
AND INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL CLAIMS

The Petitioners' convictions were erroneously

affirmed in COMMONWEALTH V. DiTORO,51 Mass.App.Ct 191(2001)

without consideration of Confrontation Clause and related

ineffective assistance of trial and appellate counsel claims n.2/.

The basis of the Commonwealth's case involved

events on May 21,1996 between State Police Trooper Raymond Auld

and codefendant Kimberly Cooper, events on May 22,1996  which

were also between Auld and Cooper, as well as, a telephone  n.3/

(6)

---

n.1/Citations to the State Court record Appendix will be
denoted as (A._____) and citations to the transcripts Respondent
shall file correspond to the following volume numbers and dates:
1:2/3/98; 2:2/20/98; 3: 3/19/98; 4: 4/15/98; 5: 5/29/98; 6: 7/7/98;
7: 7/8/98; 8: 7/9/98; 9: 7/10/98; 10: 7/15/98; 11: 8/10/98;
and 12: 8/12/98.

n.2/ The 01-P-1753 panel decision (page 1) finding of **"seasoned
appellate counsel"** is not entitled to any presumption of
correctness because it is directly contradicted by the undisputed
sworn pro se new trial motion which explained in detail the
Stern & Shapiro law firm Petitioner Bonnie DiToro retained used
an inexperienced new 1998 Massachusetts Bar Attorney Kenneth
Resnik to prepare her direct appeal brief (A.54-56) under the
common practice of big-name lawfirms ripping clients off without
contemporaneously advising them at the briefing time that the
fee is split with a junior associate who does the briefing
work and experienced retained Attorney Jonathan Shapiro only
appeared for the fifteen minute oral argument without doing
proper brief preperation personally (A.55) and probably not
personally reviewing the record since only the issues incompetent
Attorney John Bosk told Stern & Shapiro about were raised when
Ground One and Ground Four issues were omitted and Stern & Shapiro
has an office practice of not raising ineffective assistance of
trial counsel in any appeal,esspecially appeals where lawyers
like Bosk made the retainer fee referal to Stern & Shapiro, as
the requested federal evidentiary hearing is expected to fully
develop the record on,id. Also see Ground Four,page 31,infra.

n.3/Because there cannot be a criminal joint venture between a
government agent and a codefendant, the pro se new trial motion
(page 15) and appellate brief(page 10) alerted the lower state
Courts to the absence of any legal basis for finding a May 21,
1996 joint venture between Cooper and Auld, or a May 22,1996
joint venture between the voice "David" and Auld,id.

conversation between an unauthenticated voice "David" and Auld, which was not

identified at trial as the voice of co-defendant David Clune; events on May 23, 1996

involving Cooper, Clune and Auld and challenged telephone records; and, as

described in the defendant's direct appeal, Commonwealth v. DiToro, 51

Mass.App.Ct. 191 (2001), events on May 24, 1996, involving co-defendant Donald

Hall's possession and sale of a kilo of cocaine to Auld. Id. [4] Because proof of the

state of the defendant's knowledge of Hall's drug trafficking was entirely

circumstantial and highly disputed, the Commonwealth sought to bolster its case

through the introduction of unauthenticated telephone calls on May 22, 1996, from an

unidentified voice "David" that was outside the scope of the May 24, 1996 trafficking

indictment. [5]

As more specifically set out in Ground Two facts, infra, incorporated herein,

the Commonwealth's surprise use of the May 22, 1996 telephone call-statements,

came after the trial court had made pretrial rulings excluding identical May 23, 1996

hearsay (2:10-28). In regard to his exclusionary rulings, the trial judge posed three

questions implicating Sixth Amendment Confrontation Clause rights: "Why isn't that

inadmissible hearsay, if it's offered for the truth of the contents? (2-12) "Our people

are coming from somewhere else, why isn't that straight hearsay excludable?" (2:15),

and "Bruton doesn't bother you?" (2:19). The exclusion of non-testifying co-

defendant David Clune's May 23, 1996, "our people" cocaine delivery statement was

---

[4]     Because the Commonwealth failed to present trial evidence of David Clune's presence for the
May 24, 1996 trafficking offense, it did not establish his membership in that ch. 94C, §32E(b) joint
venture theory.

[5]     The Commonwealth elected not to proceed to trial on the May 21, 1996 through May 24,
1996 ch. 94C, §40 conspiracy indictment which involved David Clune as a co-conspirator.

supported by findings that it was, "...not admissible against DiToro... because it's simply too remote from the evidence which does not link her to the transaction... you have her driving the car on the 24th and nothing on the 23rd" (2:23-24). The prosecutor, in a pre-trial posture, agreed that the trial court was "correct" to rely on the fact that, "...there is no other indication, as I understand it, that on the day, that's the day before the delivery, either Hall or DiToro was involved" (2:22). At trial, the evidence of the defendant's involvement in a joint venture on May 21, 1996 or May 22, 1996 did not improve.

With respect to events on May 21, 1996, at trial, the court excluded what Cooper would have testified to having said regarding her boyfriend David (8:33-34). When the Commonwealth attempted to introduce May 21, 1996 statements from Cooper as part of "a joint venture", the court sustained the defendant's objection by ruling "not yet, it isn't (8:31).

Although they were outside the scope of the May 24, 1996 trafficking indictment, Trooper Auld was permitted to repeat his own May 21, 1996 prior consistent statements that he, "...agreed to purchase as much as a kilo of cocaine" (8:34), and that he "told Kimberly Cooper that (he) needed a new cocaine connection" (8:32), followed by the May 22, 1996 statement that he, "asked her if she found out the prices that (he) asked her to get for the pound and the kilo of cocaine" (8:35). Over the defendant's objection, Auld was allowed to testify that on the afternoon of May 22, 1996, "she gave me the prices. I then called back, she told me I had to call back later to speak to David". (8:36)

The telephone number (508) 667-1023 belonged to someone named "Hanley" and was described by Auld as, "...the Billerica number that I was given by Kimberly Cooper" (8:40). No evidence was presented linking co-defendant David Clune to that telephone number (508) 667-1023 and Clune's voice was never identified as the voice of "David" when Auld testified that on May 22, 1996, "I called that evening and I spoke to a male who identified himself as David" (8:36-37). The absence of any authentication of the telephone call voice "David" and the argument that because Trooper Auld was a government agent, there could be no joint venture conspiracy between David and Auld, and no evidence linked the defendant to David on May 22, 1996, was fully presented in the defendant's pro se motion for a new trial and in the defendant's brief to the Appeals Court. (at pages 8-11).

To avoid the Commonwealth's failure to present evidence that the voice "David" was the voice of David Clune, or that Clune was a member of a joint venture with the defendant, the Appeals Court made the clearly erroneous ruling that, "The identity of the person to whom Auld spoke was irrelevant. Rather, Auld's conversation was relevant because whomever he spoke with was able to summon a large quantity of cocaine, which was delivered by the defendant and Donald Hall" (DiToro at 2-3). The Appeals Court ruling that the hearsay was admissible under a joint venture or statement against penal interest theory, was not supported by evidence at trial and is an unreasonable application of the facts.

The Appeals Court's decision on waiver based on trial counsel failing to present the issue, is contrary to the pre-trial Confrontation Clause claims (2:10-28) and contemporaneous objection when the prosecutor first attempted to present the

hearsay attributed to David. At that point, the trial judge held, "No, the objection that Mr. Bosk (i.e. trial counsel) is trying to make is sustained. It is very simple, ladies and gentlemen, the witness may not tell you what someone else told him if it is put before you with the expectation that you will believe that what the out-of-court person said was true, unless there is some particular exception to the hearsay rule involved. Now, counsel, let me see you at the sidebar." (8:37)

At sidebar, the prosecutor stated, "I believe even if he were to say that he had people who can get him cocaine, I believe that is part of a joint venture and it is admissible according to case law" (8:38). Trial counsel, however, did not raise the pre-trial exclusion of David Clune's identical May 23, 1996 hearsay statement (compare 2:23-24 with 8:38) or the motion judge's suggestion for exclusion based on "other issues", such as delayed disclosure" (2:25). The trial judge then warned, "Mr. Breen, you can make the case complicated and run all kinds of risks something untoward will happen and you will blow the prosecution, or you can make it very simple and stay away from difficult problems. Now I leave it up to you. I am just the umpire". (8:38-39)

Trial counsel next failed to make a subsequent objection when Trooper Auld testified that during his May 22, 1996 telephone conversation with someone who identified himself as "David", that person, "…said that he knew some people that could deliver the cocaine". (8:39) Trial counsel did not request a contemporaneous (8:36-40) or final (9:9-17, 54-102) instruction on the jury's duty to disregard the "David", "some people" statement unless other independent evidence identified David's voice as the voice of co-defendant David Clune, that at the time of the May

(10)

22, 1996 statement independent evidence showed that the defendant was a member of a joint venture with Clune and the statement was in furtherance of the defendant's May 24, 1996 trafficking indictment, nor did counsel object to the absence of such instruction after the final charge, Id.

Trial counsel also failed to object to the lack of foundation (8:35-44) for the introduction of Trooper Auld's June 21, 1996 telephone bill concerning a call by David Clune made on May 23, 1996 to (508) 348-7650 (8:44-45, 47) and Auld introducing the defendant's cellular phone records for that telephone number. (8:48-54) No contemporaneous (8:44-54) or final (9:9-17, 54-102) instruction on the prerequisites for telephone record admissibility was requested, nor was the absence of such an instruction objected to. Id. Moreover, trial counsel failed to seek enforcement of G.L. ch. 233, §§78, 79J, with respect to the admissibility requirements for a certified copy of the telephone bills supported by an affidavit from the keeper of such records averring that the statutory factors governing the records had been satisfied. (8: 44-54)

Finally, trial counsel failed to object (9:40, 41, 43, 53) to the prosecutor creating a Confrontation Clause violation by focusing on this evidence for its full probative value in closing argument:

> ...there was a follow-up conversation. He spoke with... David Clune. What did David Clune tell the trooper? I have people who can deliver cocaine. That is what the evidence was. That is what set the wheel in motion and that is what set this deal in motion.
>
> And then what happens? The car arrives low and behold, a random act, ladies and gentlemen? The defendant is driving a car to this location where there is a drug deal with the drugs in the car, with another individual. I have people who can deliver cocaine.

(9:40) (emphasis added)

(11)

Because the jury requested to be reinstructed on the question of whether driving the car to the scene was sufficient to convict (9:-99) and the prosecutor focused on the improperly admitted evidence (9:40, 41, 43), timely objections by counsel, in this totally circumstantial case, would have resulted in a finding on the defendant's direct appeal that the related errors were not harmless beyond a reasonable doubt.

In regard to the related claim of appellate counsel rendering ineffective assistance, the pro se new trial motion, and the defendant's brief to the Appeals Court (at pages 16-17), requested an evidentiary hearing to determine the extent of the preparation by inexperienced associate appellate counsel, as well as, experienced appellate counsel to explan this issue selection and issue omission, Id. The Appeals Court finding of a waiver of the Confrontation Clause claim which "seasoned appellate counsel failed to raise", is clearly erroneous in that this finding is contradicted by the record of associate counsel's involvement or was based on an inadequately developed record and in either instance, is an unreasonable determination from the available facts in the record facts.

The undisputed record demonstrates that the trial judge forewarned appellate counsel that the suppression issue was weak (12:43-45), the issue of exclusion of the co-defendant's statements was without merit (12:46) and with respect to the claim of insufficient evidence, the trial judge believed that "the evidence was exceptionally strong". (12:42-43). In contrast, to the appellate issues selected by appellate counsel on the defendant's direct appeal, Commonwealth v. DiToro, 51 Mass.App.Ct. 191 (2001), the record reflected exclusion of identical hearsay (2:10-25), a series of

sustained hearsay objections (8:32, 34, 35, 36-37,40) followed by an inexplicable failure of trial counsel to object to extremely devastating inadmissible evidence and improper closing argument (8:39, 9:40, 43), which supports a post-conviction findings of non-strategic prejudicial error by trial and appellate counsel, who failed to raise Confrontation Clause violations.

### GROUND TWO FACTS SUPPORTING PROSECUTORIAL MISCONDUCT RELATED DUE PROCESS VIOLATIONS, AS WELL AS, INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS

In a pretrial posture, the Commonwealth conceded the importance of the May 23, 1996 evidence of co-defendant David Clune telling trooper Auld "our people are running late" (2:10, 12), being excluded when the prosecutor stated, "we're focusing on the strength of the case against Bonnie DiToro, in this particular discussion about what's coming in, its clear that one of the pieces of evidence which will be necessary to show her knowledge and involvement, is going to be that there is more than one person acting as the courier". (2:20)  While excluding the evidence as too remote and not falling within the scope of a joint venture on May 23, 1996 (2:23-24), the motion judge, who was also the trial judge, warned the prosecutor that even if presented in a different context, such evidence might be excluded if "other issues" like "late disclosure" objections were raised. (2:25)

The defendant's pro se new trial motion, primary (pages 18-23) and reply (pages 6-9) briefs, clearly presented a Due Process Clause violation claim based on the trial record being devoid of any pre-trial disclosure of Trooper Auld's claim that on May 22, 1996, "David" told him that "he knew some people that could deliver the cocaine". (8:39).  This statement was not contained in Auld's affidavit in support of a

search warrant, or his Grand Jury testimony, or his suppression hearing testimony, nor was it disclosed at a February 20, 1998 hearing on exclusion of an identical May 23, 1996 "our people" statement (2: 12-25) or at the final hearing on motions in limine (6: 52-58) or in the Commonwealth's opening statement. (7: 54-59)  In its brief, the Commonwealth (at page 18) conceded that the "defendant is correct that neither of Auld's prior statements or testimony contained a reference to Clune's May 22nd 'some people' statement while the Commonwealth also "assumes that there was a substantive change in Auld's testimony known to the prosecution". Id.

The trial judge refused to rule on this claim of prosecutorial sandbagging and the Appeals Court similarly failed to decide the issue when it merely restated the fact that, "the defendant argues that the prosecution failed to disclose Clune's statement that he knew some people, who could deliver the cocaine until the second day of trial".  She also argues that neither the Commonwealth nor defense counsel fairly presented Auld's previous statements before the grand jury, at the suppression hearing and in the search warrant affidavit to the effect that Clune told him a guy (not "some people") would be delivering the cocaine.  The argument fails to recognize that Auld consistently vacillated between his use of a singular noun and a plural noun to describe the drug supplier.  This alternating description provided little fodder for cross-examination and likely reflected Auld's, as well as Clune's, own lack of knowledge as to whom, precisely would arrive with the drugs". (DiToro at  page 4)

In addition to the Appeals Court decision not considering the late disclosure, due process violation claim, the record shows that the Court made a clearly erroneous and unreasonable determination of the facts underlying the ineffective assistance of

counsel claim. At no point in his trial testimony did Trooper Auld vacillate between

his use of a singular noun and plural noun to describe the drug supplier while his

plural "some people" (8:39) testimony was repeatedly focused on during the

prosecutor's closing argument (9:40, 43) in a manner consistent with the

Commonwealth's pre-trial view of an identical plural cocaine courier ("our people")

statement being necessary "to show her knowledge and involvement". (2:20)

The minimal use in the series of pre-trial statements of separate plural terms

was far exceeded by the following thirteen references by Trooper Auld to a singular

male gender cocaine courier: "the guy was going to be a little late", "he said his guy

was running late, he thought that the guy may show up", "(s)he kept saying he'll be

there, he'll be there, "he was kind of dragging his feet", "she swore he was coming"

"he did eventually arrive around 4:30". (Grand Jury transcript A. 144, 146, 147, 148,

149); on May 23, 1996, Auld heard Clune saying "his guy was running late" and on

May 24, 1996 at approximately 3:30 p.m., Cooper made a telephone call and talked to

the person which she purported to me had the cocaine. At approximately 4:20 p.m.,

Cooper had another telephone conversation and then advised me that the person

delivering the cocaine would be there soon. (Search Warrant Application) Rather

than supporting speculation that the unused impeachment record, "reflected…Clune's

own lack of knowledge as to whom precisely would arrive with the drugs," the actual

record reflects singular male gender courier knowledge not only possessed by Clune,

but also by co-defendant Kimberly Cooper's corroborating knowledge, Id.

During a period of more than four months preceding trial, counsel knew that

the plural ("our people") courier evidence had been excluded (2:10-25), however, the

$$(15)$$

undeveloped record does not reflect the extent to which he was lulled into believing

he would not need to impeach Auld at trial, nor does it reflect whether he reviewed

impeachment material prior to trial or even had the grand jury transcript and search

warrant with him at trial. The undeveloped record does not reflect the extent of

counsel's surprise from the "some people" plural cocaine courier trial testimony

(8:39) or the extent prosecutorial sandbagging may have created trial counsel's failure

to make a contemporaneous objection, nor has any court decided the question of

whether late disclosure constitutes good cause for excusing the procedural default by

counsel.

The motion judge and the Appeals Court similarly failed to decide related

issues presented in the pro se motion for new trial and the defendant's brief (at pages

22-23), which concerned appellate counsel's failure to use the record of corroboration

supporting admission of co-defendant Cooper's exculpatory statement exonerating

the defendant as a statement against penal interests. Commonwealth v. DiToro, 51

Mass.App.Ct. 191, 198-199 (2001) and appellate counsel's non-strategic failure to

brief the issue of ineffective assistance of trial counsel's failure to utilize

impeachment evidence or seek exclusion of the "some people" statement based on

"late disclosure". (2:25) Neither court ruled or requested an evidentiary hearing to

fully develop the ground two record. A rule 8,of the rules governing
28 USC § 2254 cases,evidentiary hearing is requested on
Grounds One,Two,Three and Four,WILLIAMS V. TAYLOR,529 US 420,
437(2000);MAPES V. COYLE,171 F3d 408,427-429(6th Cir 1999);
PHOENIX V. MATESANZ,189 F3d 20(1st Cir 1999);GONZALES-SOBERAL
V. UNITED STATES,294 F3d 273(1st Cir 2001).

**GROUND THREE FACTS SUPPORTING AN EVIDENTIARY HEARING; FINDING INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL AND INSUFFICIENT EVIDENCE PRESENTED TO THE GRAND JURY TO SUPPORT THE PRINCIPAL CHAPTER 94C, §32E(b)(4) TRAFFICKING INDICTMENT**

The Appeals Court failed to rule on the defendant's request (brief at 23-33) for an evidentiary hearing which was properly presented to the trial court with respect to the following six areas of ineffective assistance of trial counsel.

a) The Substantive Indictment Defect And Related Non-Strategic And Prejudicial Omission By Counsel

Both the pro se motion for a new trial and the defendant's brief (at 23, 24, 27) clearly presented an issue of insufficient evidence being presented to the grand jury to support the principal May 24, 1996 No. 96-1272 (0010) ch. 94C, §32E(b)(4) trafficking indictment. After the trial judge refused to make Mass.Crim.P. Rule 30(b) findings or decide this issue, the Appeals Court panel also failed to decide this defective indictment issue.

The grand jury was not presented with telephone records or testimony linking the defendant to telephone conversations with either of the co-defendants. The grand jury was not told that her identification was found in the bag with the cocaine, but were merely advised that when Hall opened the black leather bag, which was similar to a ladies satchel purse, on Cooper's kitchen counter, Trooper Auld observed a wallet, a tube of lipstick and some Kleenex with the cocaine.

Although relevant to the untried ch. 94C, §40 joint venture May 21, 1996 to May 24, 1996 conspiracy indictment no. 96-1272 (002), the earlier "his people" plural cocaine source statements had been ruled too remote and irrelevant (2:24) to

the May 24, 1996 principal ch. 94C, §32E(b)(4) trafficking indictment no. 96-1272 (001).

The remaining evidence within the scope of the May 24, 1996 trafficking offense presented the grand jury with a clear picture that only one male gender cocaine courier was expected when "there was a promise that the cocaine would be there at 1:00 or a little after 1:00," referring to Cooper telling Auld "the person", "he'll be there", "he was king of dragging his feet", "he was coming", when she was engaged in last minute negotiations with the "gentlemen" and "he eventually did arrive around 4:30". Hall was carrying a black leather bag when he exited the passenger side of a white car, a female got out of the driver's door and went into Cooper's house. 37.43 grams of 39% pure cocaine was found in the glove compartment of the white car, 909.55 grams of 33% pure cocaine was in the black bag and when the defendant was arrested in Cooper's house she had .60 grams of 93% pure cocaine on her person.

The grand jury was not presented with evidence of the defendant being near or having a plain view of the drug transaction in Cooper's house. Other than the mere mention of someone named Bonnie DiToro being arrested with six tenths of a gram of a different form of pure cocaine, (i.e. freebase or crack) cocaine in Cooper's house, there was no evidence presented to the grand jury clearly identifying her as Hall's driver or in any way connecting her to the black bag and 909.55 grams of powdered cocaine.

Trial counsel failed to file a motion to dismiss the indictment on the basis of the Commonwealth's misleading presentation of co-defendants' inculpatory

statements while concealing their exculpatory statements, "Hey, why is she here, she didn't have anything to do with this?" (6:100), "why are you arresting, why are you holding Bonnie, she didn't have anything to do with this?" (8:177) and failed to move to dismiss based on the obviously insufficient evidence presented to the grand jury for indictment. The undeveloped record shows no strategic reason for counsel's omission.

(b) Counsel's Non-Strategic And Prejudicial Failure To Make A Spontaneous Utterance Argument:

To support her request for an evidentiary hearing, the defendant acting pro se filed the affidavits of Kimberly Cooper and Donald Hall which stated that they were surprised to learn of the defendant's arrest and as a result of that startling event, they made spontaneous exculpatory statements. (6:100, 8:177) Without ordering an evidentiary hearing to fully develop the record, the Appeals Court rejected the merits of an "argument that each co-defendant's exculpatory statement should have been admitted as a spontaneous utterance" finding such argument, "...fails because the defendant has not shown that either declarant displayed a degree of excitement sufficient to conclude that their statement constituted a spontaneous reaction to an exciting event" (DiToro at 6).

No such argument was presented to the Appeals Court and the following record facts show the panel's decision was both contrary to the applicable law governing an analysis of ineffective assistance of counsel claims and an unreasonable determination of the facts. In the Superior Court, the pro se motion argued that, "After hearing, Attorney Bosk explained his reasons, if any, for not specifically arguing the spontaneous utterance exception, and hearing Lieutenant Connor,

Cooper's and Hall's testimony, this Court should make a Criminal Rule 30(b) finding that Bosk's lack of legal knowledge and failure to recognize such exception could be applied, resulted in a non-strategic error". Had such statements been heard by the jury, since no one knew better than Cooper and Hall who was and who was not involved, the result of the trial would have been favorably different. The defendant's brief (at 23-24, 27-28) presented the argument solely as an ineffective assistance claim for which an evidentiary hearing was necessary. Id.

c) Counsel's Non-Strategic And Prejudicial Failure To Present Cooper And Hall's Testimony At Trial; Failure To Investigate And Failure To Present Other Witnesses And Evidence

The record facts indicate that the Appeals Court decision was in error in finding that, "...the defendant fails to show what more counsel could have uncovered with additional investigation" (DiToro at 6) while failing to address the actually innocent defendant's evidentiary hearing requests.

Hall's affidavit corroborates the claim in the pro se new trial motion that trial counsel failed to investigate the identity of the other driver and failed to present her as a witness at trial. Because counsel asserted that he intended to introduce Cooper and Hall's statements (6:100; 8:177-179), noted the other female, who was Hall's driver at 3:00 p.m. on May 24, 1996 (7:62-65,71) and opened the question of ownership of the vehicle, which did not belong to the defendant (8:89), the undeveloped record shows no strategic reason for counsel's failure to interview and present the testimony of these three witnesses or show ownership of the courier vehicle by documentary evidence, Id.

The affidavits of Kimberly Cooper(A.118-121)
and Donald Hall (A.124-126) in support of the motion for a new
trial explained the basis for their exculpatory statements (to
the police) to the effect that DiToro had nothing to do with the
drug deal",DiToro,supra,51 Mass.App.Ct. at 198. Cooper averred
that she was not interviewed nor requested to testify by defense
counsel,John Bosk,Esq.(A.120). Had Cooper testified regarding
her statement, she would have indicated, inter alia, that she
was living with co-defendant David Clune at the time of the
offense and that he was the middleman between undercover Trooper
Auld and co-defendant Hall (A.118,120-121);DiToro,supra, at 192-
195. At no time did Clune mention that Bonnie DiToro was in any
way involved in the drug deal, nor did Cooper speak with Bonnie
DiToro regarding the drug transaction which only involved Auld,
Hall and herself (A.118). On May 23,1996, Clune told Cooper that
he had spoken with Donald Hall on a cellular telephone during
their meeting with Auld at a 99 Restaurant and Clune requested
Cooper to be available to facilitate the drug transaction(A.119.

In regard to the telephone calls on May 24,
1996 at 12:03 p.m. and 2:16 p.m., from Bonnie DiToro's cellular
telephone to the Cooper residence,DiToro,supra,51 Mass.App.Ct.
at 198. Cooper would have testified that the calls were Bonnie
DiToro's efforts to locate her boyfriend,Donald Hall, to pick
her up (A.119). Cooper had no reason to expect Bonnie DiToro
to be present at the transaction on May 24,1996 and she seated
Bonnie at the end of her couch furthest away from the kitchen,
turned the television on and placed herself between Bonnie DiToro
and the drug transaction (A.119).

Donald Hall told counsel that he wanted to testify on behalf of Bonnie DiToro (A.125-126). Hall would have testified that the telephone call on May 23,1996 from David Clune was made to him and not to Bonnie DiToro using Bonnie's cellular telephone when Hall spoke with Clune (A.124).

On May 24,1996, another woman was driving Hall prior to the drug transaction and upon receiving a message that Bonnie DiToro needed his assistance, Hall told that woman to drive him to the scene of the accident (A.124-125) which was consistant with trial testimony of another witness at the scene of the accident (Tr. 7:69-71).

Bonnie DiToro remained in the rear seat of Hall's vehicle with her backpack until Hall directed the other woman to leave the car at a fast-food restaurant near Cooper's residence because Hall did not want the other woman to know where Kimberly Cooper and David Clune lived. Hall used Bonnie DiToro's backpack to conceal the bulge in his pants where he had placed the package of cocaine as he exited the car (A.125). Hall also averred that Bonnie DiToro did not know that he was involved in a drug transaction (A.124-125).

These averments from Cooper and Hall were consistant with what Bonnie DiToro would have testified to had she been properly prepared and given an opportunity to testify at trial (A.112-116).

The Appeals Court's 01-P-1753 decision(page 6) which ignored the foregoing affidavit showing of actual innocense should not be presumed correct under 28 USC § 2254(e)(1) and "resulted in a decision that was based on an unreasonable deter- mination of the facts" "contrary to" federal law,28 USC §2254(d)(1)(2).

d) Counsel's Non-Strategic Failure To Prepare The Defendant To Testify,
Directions To Her And Resting Without Consulting Her Based On
Counsel's Unilateral Decision That The Defendant Not Testify

The defendant's affidavit explained the details of trial counsel's complete

failure to prepare her to testify and resting the case without consulting her based on

his unilateral decision that she not testify.

> The Court: Want to talk to your client and then decide if you are going to
> rest?
>
> Mr. Bosk: My client, my client is not going to take the witness stand Your
> Honor, and with regard to Mr. Connor, he was my last witness, so I would
> rest.                                                           (sidebar 8:179)

The record reflects that trial counsel failed throughout the trial to request a

ruling on a pending motion in limine to exclude the defendant's prior criminal record.

The colloquy reflects the defendant had "already consulted" with counsel about

testifying (6:51), not that she had been advised of changing facts, which excluded her

main defense evidence foundation for any prior trial strategy. (8: 174-179)  The

defendant's affidavit further explained that she had been mislead by trial counsel that

she would be acquitted based on the testimony of Lieutenant Connor, the exculpatory

statements of Cooper and Hall and counsel's assessment that there was insufficient

evidence to convict her.  The record reflects, however, that trial counsel failed to

properly summons Lieutenant Connor, both Cooper and Hall's statements were

excluded without Connor's testimony on surrounding circumstances and without

providing the defendant an opportunity to make a decision to testify under those

changed circumstances, trial counsel rested the case without consulting the defendant.

(8:174-179)

e) Counsel's Misleading Advice, Which Deprived The Defendant Of An
Opportunity To Accept A Lesser Sentence Offer, And Precluded
Her From Making A Knowing, Intelligent And Voluntary Decision To
Exercise Her Right To Trial

The decision in Commonwealth v. DiToro, 51 Mass.App.Ct. 191, 197 (2001)

reflects that the pre-trial record demonstrates that a competent attorney would have

advised his client that her suppression motion had no merit, Id. The trial judge

characterized the evidence as being "exceptionally strong" (12:42;43) and such

evidence with the exception of the plural drug courier ("some people") surprise

testimony, was known to counsel for approximately two years prior to trial. The

Commonwealth asserted that trial counsel was misrepresenting facts because

Lieutenant Connor advised the prosecutor of facts which were the opposite of trial

counsel's offer of proof. (8:176) The record also reflects that trial counsel failed to

summons Connor to testify on the last day of evidence (8:174-176), nor did counsel

have Connor appear before closing arguments on the last day of trial (9:13-15) to

clarify the appellate record on the prosecutor's assertion that trial counsel

misrepresented Cooper and Hall's statements to Connor. (8:176) Cooper and Hall's

affidavits show that trial counsel failed to interview either of them concerning the

exculpatory statements or to prepare them to testify in the event that Lieutenant

Connor would not be able to testify to their exculpatory statements. Trial counsel's

lack of legal knowledge of the prerequisites for the admissibility of statements against

penal interest, as well as, counsel's omission of argument on the admissibility of the

statements as spontaneous utterances, is reflected in the colloquy concerning Cooper

and Hall's statements. (8:175-179)

To support her evidentiary hearing requests, the defendant's affidavit averred that trial counsel instructed her to proceed to trial and not to accept a three year sentence offer because counsel advised her that she would not be found guilty based on insufficient evidence, or if convicted, she would prevail on appeal on her motion to suppress. In addition, trial counsel promised her that the exculpatory statements of Cooper and Hall would be heard by the jury through the testimony of Lieutenant Connor.

This record reflects that the Appeals Court holding (DiToro at 6-7), which did not address or resolve disputed material facts including the prosecutor's assertion of trial counsel's misrepresentations (8:176), did not address the evidentiary hearing question (brief at 23-24, 31-32, 49-50) and did not consider the pre-trial facts known to trial counsel in a prospective analysis, was an unreasonable and speculative determination of the facts resulting in a decision contrary to the facts and in a decision contrary to the proper legal analysis determined by both the Massachusetts Supreme Judicial Court and the Supreme Court of the United States.

f) Counsel's Conflicts Of Interests And Related Facts Supporting An Evidentiary Hearing

In support of her evidentiary hearing requests, primary (brief at 23-24, 32-33, 49-50), the defendant's affidavit and supplemental averments, stated that no uncertain terms, that trial counsel had been making sexual advances toward her and that she had a friend speak to him after her rejection had not deterred his persistent advances. The person who had leased the drug courier vehicle, in which additional cocaine was found, was Sean Maynard, who was the cousin of co-defendant Donald Hall and Hall was referring a number of clients to trial counsel at the same time that trial counsel

did not investigate or pursue the other suspected perpetrator defense related to Hall's girlfriend, who had been driving the courier vehicle minutes before the arrest. The undeveloped record does not show the grounds on which trial counsel did not introduce the lease agreement naming Maynard nor was the client referral conflict with uncalled defense witness Hall explored by the lower court. The Appeals Court decision did not address the evidentiary hearing question presented. (DiToro at 7).

**GROUND FOUR FACTS SUPPORTING DUE PROCESS CLAUSE VIOLATIONS WITH RELATED MATERIAL VARIANCES, INVASION OF THE PROVINCE OF THE JURY AND INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL CLAIMS**

a) Omission Of A Lesser Simple Possession Offense Instruction:

The Commonwealth introduced evidence that, at the time of her arrest on May 24, 1996, the defendant was in possession of .60 of a gram of a Class B controlled substance. (8:110) Several police witnesses testified that this small amount was consistent with personal use (8: 101, 115, 157-158) and during the charge conference, the prosecutor stated, "I believe if there is any reasonable inference of a lesser included offense, that has to be given to the jury" and after being alerted to the issue by the prosecutor (9:8-12), the trial judge decided not to instruct the jury on the lesser offense of simple possession. (9: 54-80, 95-101)

The Appeals Court held that, "the defendant was not entitled to an instruction on the lesser included offense of simple possession where the evidence shows that the crack cocaine found on her person, for which she was not charged, was a separate and distinct substance from that underlying the trafficking indictment". (DiToro at 7).

As the basis for the 96-1272 (001) trafficking indictment, the prosecutor introduced evidence at the grand jury of 90.45 grams of powdered cocaine missing

from the kilo during the 909.45 gram transaction; 37.43 grams of which were found

in the courier vehicle having 39% purity and .60 gram having 93% purity found on

the defendant's person, resulting in 947 grams of powdered cocaine being recovered.

The Appeals Court did not consider the likelihood that the missing 53 grams were

cooked into approximately 20 grams of 93% pure freebase/crack nor did the Appeals

Court resolve the underlying grand jury indictment trial evidence question of whether

the defendant did not have control of the entire kilo of cocaine, but merely had

control of a lesser amount processed into crack for personal use, which was inferred

from the negative evidence of missing powdered cocaine and the crack cocaine found

in her possession (both powdered and crack cocaine are Class B controlled

substances) and jury instructions did not distinguish between types of such

substances)

  b)  Material Variance Facts Outside The Limited Scope Of The May 24, 1996
      Principal Trafficking Indictment Exacerbated By A Joint Venture
      Instruction, Which Resulted In The Defendant's Conviction For The
      Conspiracy Indictment Of Which The Defendant Was Denied Fair Notice

As stated in the defendant's brief (at 35-39), the pro se Rule 30(a)(b) motions

presented a primary question of whether prosecutorial concealment of the May 22,

1996 joint venture conspiracy hearsay, combined with the May 21, 1996 and May 23,

1996 conspirators statements and conspiracy evidence outside the scope of the

trafficking indictment, used to secure the defendant's conviction and the joint venture

instruction, caused a material variance from the May 24, 1996 indictment no. 96-1272

(001) ch. 94C, §32E(b)(4) offense to the ch. 94C, §40 May 21, 1996 through May 24,

1996 broader conspiracy indictment no. 96-1272 (002), without fair notice. As a

secondary question the defendant suggested §40 offense might be a lesser included offense of §32E(b)(4) and should have been dismissed before trial as duplicitous.

The Commonwealth's brief (at 41) avoided the question of variance by arguing that the conspiracy indictment which was placed on file after trial should not be considered by the Appeals Court. The Appeals Court adopted the Commonwealth's position that "the defendant's argument that the conspiracy indictment should have been dismissed is not properly before this Court because the indictment was filed without a change of plea". (DiToro at 7-8). The Appeals Court did not decide the only primary argument presented to it as to whether trial evidence and instructions deprived the defendant of fair notice and caused a material variance requiring a new trial on the indictment no. 96-1272 (001) trafficking offense.

Indictment no. 96-1272 (001) gave notice only of the defendant being charged as a principal for a limited scope May 24, 1996 offense and did not name joint venturers or give notice of a joint venture theory of prosecution. The Commonwealth elected not to proceed to trial on the conspiracy indictment no. 96-1272 (002) and surprised the defendant by presenting only conspiracy evidence at her trial to support a joint venture conspiracy theory.

Over objection, the Commonwealth introduced testimony concerning May 21, 1996 co-conspirators' statements (8:32-34), followed by May 22, 1996 claimed co-conspirator's statement (8:36-37, 39) and May 23, 1996 conspiracy telephone records (8:35, 40, 44-45), which were focused on by the prosecutor in his closing argument (9:40, 41, 43), followed by joint venture conspiracy jury instructions (9:74, 76-77,95-99), which focused on the primary conspiracy element of "agreement". (9:77, 98-99)

In response to a jury question, the trial judge gave a shorthand joint venture

instruction which omitted any <u>mens rea</u> element:

> The government must prove in addition to having proved beyond a reasonable
> doubt that Mr. Hall was committing the crime of trafficking, must also prove
> <u>that Ms. DiToro was actively helping,</u> or encouraging, or putting herself by
> Agreement, <u>not necessarily by a specific verbal agreement, but an expression
> of agreement by conduct or otherwise putting herself agreement in a position
> to assist…</u> <u>In short,</u> the government has to prove beyond a reasonable doubt
> that Ms. DiToro seeking to make the crime succeed, …was seeking to make
> the crime succeed. <u>That she was,</u> if you will, <u>assisting in one way or another
> of the ways that I have discussed with you, to make the crime success… now,
> I believe what I have said so far covers your final questions: 'Does driving
> the car to the scene of the crime make that driver an accomplice or a
> participant in the crime?' So I won't specifically answer that question.</u>
> (9:98-99) (emphasis added)

Without addressing the argument that the last words the jury heard allowed

conviction for unwittingly driving the courier vehicle to the scene, the Appeals Court

held that "…contrary to the defendant's contention, the judge properly instructed on

the mens rea requirement pertaining to joint venture". (<u>DiToro</u> at 9)

Unlike the Appeals Court deciding the shorthand element instruction

challenge and the caught red handed inference, instruction challenge on their merits,

supra, the court failed to address the pro se new trial motion and brief (at 44)

challenge to the Commonwealth's burden of proof by taking the prosecutor on his

word jury instructions:

> Now <u>the government says,</u> on the basis of what you heard, <u>there is enough to
> persuade you, beyond a reasonable doubt,</u> of all the elements that the
> government has to prove, so take the government at its word, if it has, <u>then
> you needn't go beyond and if it hasn't you certainly needn't go beyond.</u>
> (9:62) (emphasis added)

e)  Trial Counsel's Non-Strategic Omissions:

In addition to his, <u>supra,</u> failure to request two necessary joint venture

statement and telephone record admissibility prerequisite instructions during the final

charge conference (9:9-17), trial counsel failed to request a lesser simple possession offense instruction while stating, "I have not read Commonwealth versus Woodward, Judge". (9:9) Subsequent to the omission of such an instruction (9: 54-80, 90-100) defense counsel similarly failed to object. (9:81-82, 101)

In addition to failing to object to Ground One, supra, May 22, 1996 hearsay (8:39) May 21, 1996 through May 23, 1996 telephone records (8:35, 40,44-55) and closing argument which focused on such pre-date-of-indictment evidence (9:40, 41, 43), trial counsel failed to object (9:80-81, 101) to related joint venture jury instructions (9: 74-77, 95-99) and other evidence (8:32-37, 40), which caused a material variance from the May 24, 1996 ch. 94C, §E(b)(4) trafficking offense, without notice, to the broader May 21, 1996 through May 24, 1996 ch. 94C, §40 conspiracy offense. Id.

Trial counsel did not request (9:9-17) and failed to object to the complete absence of (9:80-81,101) any "Class B controlled substance" essential element jury instruction (9:54-80, 91-100) knowing the indictment, which was the only other possible source of jury knowledge of such element, was not sent to the jury room. (8:188)

Similarly, despite Massachusetts law requiring a joint venturer to have knowledge that a co-defendant possesses contraband, such as a dangerous weapon, and ch. 94C, §32E(b) using the term "knowingly", trial counsel failed to request, or to object to the absence of, a joint venture instruction requiring the Commonwealth to prove the defendant had knowledge of Hall possessing and distributing 200 grams or more of a Class B controlled substance. (9:9-17, 54-101) Counsel failed to object to

repeated jury instructions which stated the Commonwealth did not have to prove the defendant's knowledge of her co-defendant possessing a weight of drugs (9:75-77, 95-96) which resulted in her aggravated fifteen year ch. 94C, §32E(b)(4) sentence which exceeded the ten year maximum sentence ch. 94C, §32A without a drug weight element. Additionally, defense counsel failed to object (9:80-81,100) to the caught red handed (9:65), take the prosecutor at his word (9:62) and shorthand element instruction which omitted any mention of mens rea. (9:98-99)

     f) Ineffective Assistance Of Appellate Counsel:

     At an August 12, 1998 hearing, the trial judge advised appellate counsel that it was the Court's "considered judgment that the chances for success on the branch of the case dealing with the motion to suppress are so small as not to justify a stay of sentence (12:43), that "the evidence was exceptionally strong" (12:42-43) and that there was no likelihood of success on the issue of Kimberly Cooper and Donald Hall's exculpatory statements being excluded. (12:46) The Appeals Court agreed that these issues were without merit, Commonwealth v. DiToro, 51 Mass.App.Ct. 191 (March 22, 2001). <u>a6/</u>

     An evidentiary hearing was not ordered to develop the record or reasons as to why appellate counsel did not raise instructional errors or ineffective assistance of trial counsel issues. The present record contains no explanation of reasons why appellate counsel did not request supplemental briefing prior to February 1, 2001 oral argument in light of the June 26, 2000 decision in Apprendi v. New Jersey, 530 U.S. 466 (2000), which was foreshadowed by the cocaine conspiracy decision in Edwards v. United States, 523 U.S. 511, 515 (1998).

a6/ See Footnote 2, At Page 6, Supra, incorporated herein Rebutting presumption of correctness in state court decision, with Respect to Non-strategic errors of inexperienced (31) Appellate counsel.

E. GROUND FIVE: INSUFFICIENT EVIDENCE TO SUPPORT CONVICTION
   CONTRAVENING FOURTEENTH AMENDMENT TO THE UNITED STATES
   CONSTITUTION:

Facts Supporting Ground Five:

Petitioner incorporates

herein her direct appeal brief insufficient evidence facts

and legal argument, to be filed by Respondent with Respondents

Supplemental Answer. n.7/ DiToro,supra,51 Mass App Ct at 198.

F. GROUND SIX: DENIAL OF DUE PROCESS RIGHT TO PRESENT DEFENSE:

Facts Supporting Ground Six:

Petitioner incorporates

herein her direct appeal brief facts and legal argument

on exclusion of codefendants Donald Hall and Kimberly Cooper's

statements to police which exculpated Petitioner and showed

her actual innocense n.8/ which were made spontaneously and

independantly,DiToro,supra, 51 Mass App Ct at 198-199.

(32)

---

n.7/Because of Ground One,supra,facts showing evidence should
have been excluded, the state Court decision is not entitled to
any presumption of correctness. In addition, any favorable
decision on element of knowledge of drug weight set out in
Ground Four may change the sufficiency analysis,while the
absence of sufficient evidence to support a trafficking indictment,
set out in Ground Three, should be contrasted with Ground
Five after Respondent files the complete state transcripts.

n.8/ Ground Six falls under the same analysis as  CHIA V.
CAMBRA,281 F3d 1032,1034-1041(9th Cir 2002)

(c) At trial _____ John Bosk _____

(d) At sentencing _____ ~~Jonathan Shapiro, Kenneth resnik & John Bosk~~ _____

(e) On appeal _____ Kenneth Resnik & Jonathan Shapiro _____

(f) In any post—conviction proceeding _____ Bernard Grossberg _____

(g) On appeal from any adverse ruling in a post—conviction proceeding _____ Bernard Grossberg _____

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and the same time?

   Yes ☐        No ☒

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?

   Yes ☐        No ☒

   (a) If so, give name and location of court which imposed sentence to be served in the future: _____

   (b) Give date and length of the above sentence: _____

   (c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?

   Yes ☐        No ☒ XX

Wherefore, petitioner prays that the Court grant petitioner relief to which he may be entitled in this proceeding.
after a full evidentiary hearing with Court assigning counsel for
such evidentiary hearing for the indigent Petitioner

_____
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

_December 3_
_~~November 22~~, 2003_
(date)

_____
Signature of Petitioner

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** PETITIONER

BONNIE DiTORO
PO BOX 9007
FRAMINGHAM, MA 01701

**DEFENDANTS** RESPONDENT

BARBARA GUARINO
PO Box 9007
FRAMINGHAM, MA. 01701

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF Middlesex
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT Middlesex
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
        TRACT OF LAND INVOLVED.

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

pro se

ATTORNEYS (IF KNOWN)

Attorney general Thomas Reily
One Ashburton Place
Boston, MA. 02108

**II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY)

☐ 1 U.S. Government
     Plaintiff

☒ 3 Federal Question
     (U.S. Government Not a Party)

☐ 2 U.S. Government
     Defendant

☐ 4 Diversity
     (Indicate Citizenship of Parties
     in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF
(For Diversity Cases Only)                  AND ONE BOX FOR DEFENDANT)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     another district
     (specify)

☐ 6 Multidistrict
     Litigation

☐ 7 Appeal to District
     Judge from
     Magistrate
     Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury – Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| ☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☒ 530 General | | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 240 Torts to Land | | ☐ 535 Death Penalty | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 540 Mandamus & Other | ☐ 791 Empl. Ret. Inc. Security Act | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions |
| ☐ 290 All Other Real Property | ☐ 440 Other Civil Rights | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE.
DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

28 USC § 2254 State prisoner unlawfully confined in violation
of the constitution of the United States (see six grounds)

**VII. REQUESTED IN**
**COMPLAINT:**

CHECK IF THIS IS A **CLASS ACTION**
☐ UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:    ☐ YES    ☒ NO

**VIII. RELATED CASE(S)**
**IF ANY**
(See instructions):

JUDGE _____    DOCKET NUMBER _____

DATE

SIGNATURE OF ATTORNEY OF RECORD
S. DiToro

**FOR OFFICE USE ONLY**

RECEIPT #_____    AMOUNT_____    APPLYING IFP_____    JUDGE_____    MAG. JUDGE_____